UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

MARY MOORE                                                                                               PLAINTIFF

v.                                                                           CIVIL ACTION NO. 3:13-cv-1074-HTW-LRA

CAROLYN W. COLVIN
Acting Commissioner of Social Security                                                  DEFENDANT

REPORT AND RECOMMENDATION

This cause is before the undersigned for a report and recommendation as to Plaintiff's Motion for Summary Judgment [11] and Defendant's Motion for an Order Affirming the Decision of the Commissioner [13]. Having considered the record in this matter, the undersigned recommends that Plaintiff's motion be denied and Defendant's motion be granted.

**HISTORY**

Plaintiff's application for supplemental security income, based on alleged disability, was denied initially and upon reconsideration, as well as denied by an Administrative Law Judge (ALJ) on October 16, 2012, and the Appeals Council on October 21, 2013. [10] at 8, 25. Plaintiff was 42 years old at the time of the alleged onset of disability, making her a "younger" person for social security purposes. Plaintiff has an eleventh grade education, and no significant work history. [10] at 18.

Following the applicable five-step sequential analysis,[1] the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of June 3, 2010 (step 1), and had severe impairments of lumbar spondylosis and degenerative disc disease of the lumbar spine, mild acromioclavicular joint osteoarthritis and some tendinitis of the left shoulder, possible asthma, obesity and a major depressive disorder (step 2). The ALJ concluded that Plaintiff's impairments were not as severe as any impairment or combination of impairments listed as presumptively disabling in the applicable regulations (step 3). The ALJ then determined that Plaintiff retained the residual functional capacity (RFC) to perform light work, except with no climbing of ladders, ropes or scaffolds, occasional climbing of ramps or stairs, occasional balancing, stooping, crouching, kneeling and crawling, only occasional overhead reaching with the left non-dominant arm, no pushing or pulling of more than 20 pounds on a frequent basis, no concentrated exposure to extreme cold, extreme heat or to pulmonary irritants such as fumes, odors, dust, gases or chemicals, and she is limited to the performance of simple, routine and repetitive tasks with only occasional interaction with the public, coworkers and supervisors. [10] at 18.  The Plaintiff had no past relevant work (step 4).  *Id.* at 23.  At step 5, utilizing the

---

[1] "In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007).  If, at any step, the plaintiff is determined to be disabled or not disabled, the inquiry ends.  The plaintiff bears the burden through the first four steps of the analysis.  At the fifth, the defendant must show that there is other substantial work in the national economy that the claimant can perform.  *See, e.g., Myers v. Apfel*, 238 F.3d 617, 619-620 (5th Cir. 2001).

testimony of a vocational expert (VE), the ALJ determined that Plaintiff was capable of performing other work and therefore not disabled. [10] at 24-25.

## STANDARD OF REVIEW

When considering social security appeals, this Court's review is limited to determining whether substantial evidence supports the findings made by the Social Security Administration and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Adler v. Astrue*, 501 F.3d 446, 447 (5th Cir. 2007). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)). The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not reweigh the evidence, try the case de novo, or substitute its own judgment for that of the Commissioner even if it finds that the evidence preponderates against the Commissioner's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988)*; Harrell*, 862 F.2d at 475. If the Commissioner's decision is supported by the evidence, then it is conclusive and must be upheld.

**THE ISSUES PRESENTED**

**1.      Treating Physician's Opinion**

Plaintiff first contends that the ALJ committed reversible error in not affording the proper weight to the medical evidence, and more particularly in not giving controlling weight to the opinion of her treating physician. [12] at 10. Plaintiff argues that she is regularly treated by Dr. Azhar Pasha and that his opinion as to her limitations is entitled to deference. The ALJ addressed Dr. Pasha's treatment of Plaintiff:

> The Judge does note that medical records from Dr. Pasha from February-August 2012 indicate complaints of back pain with a number of lumbar epidural injections done (Exhibit B16F). The listed diagnosis there is lumbar spondylosis and degenerative disc disease for the lumbar spine. There is no mention in these records of actual disc herniation or serious spinal stenosis. These treatment notes also indicate complaints of left shoulder pain. MRI testing for the left shoulder done on August 22, 2011 showed "mild" acromioclavicular joint osteoarthritis and some tendinitis (Exhibit B8F). Diagnostic testing done on March 22, 2010 for the left thigh showed a nodule suggestive of a lipoma (i.e., a fatty tumor; not metastatic or cancerous) (Exhibit B3F). There is no medical evidence to establish any problems from this. X-rays of the left knee done on July 12, 2011 were normal (Exhibit B8F). X-rays of the left hip done on September 27, 2010 were normal (ld.). Chest x-rays done on May 30, 2011, September 19, 2011, and March 2, 2012 were unremarkable (Exhibit B10F). CT scan testing for the chest done on August 4, 2012 was unremarkable (Exhibit B15F). Cardiac work-up done in September 2010 was normal (Exhibit B1OF).
>
> Treating physician A. Pasha completed an assessment dated July 24, 2012 (Exhibit B11F). In this report Dr. Pasha indicates that MRI testing has shown lumbar spondylosis at multiple levels. As for the claimant's physical capacity, Dr. Pasha advises that the claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently. Dr. Pasha advises that the claimant can stand and/or walk for about three hours in an eight-hour workday and can sit for about six hours in an eight-hour workday. Dr. Pasha advises that the claimant does not have any restrictions with regard to using her arm/hands to perform reaching (including overhead reaching), handling or fingering actions but should push/pull no more than 20 pounds on a frequent basis. Dr. Pasha advises that the claimant has no restrictions with regard to pulmonary irritants etc.

4

[10] at 19-20.  Plaintiff points out that when determining Plaintiff's RFC, the ALJ failed to mention Dr. Pasha's statement that Plaintiff would need to lie down at unpredictable intervals and would miss more than three times a month.  Plaintiff further argues that she has been prejudiced by the ALJ's failure to address all the limitations since the testimony of the vocational expert (VE) indicates that Plaintiff could not work if the more limiting portions of Dr. Pasha's statement had been utilized in the ALJ's hypothetical.  When analyzing Dr. Pasha's medical source statement in light of the record as a whole, the ALJ noted:

> The claimant presents with complaints of back pain, with Dr. Pasha listing lumbar spondylosis and degenerative disc disease for the lumbar spine. Dr. Pasha refers to MRI testing in support of this specific diagnosis.  He makes no mention of any disc herniation or serious lumbar spine stenosis.  The claimant has some complaints of left shoulder pain, but the MRI testing shows only mild acromioclavicular joint osteoarthritis with some tendinitis.  This evidence provides some basis for back and left shoulder pain complaints; it does not provide a reasonable basis for the very serious pain complaints the claimant testified to at the hearing.  X-rays for the left knee and left hip were normal and the Judge finds that there this is no objective medical evidence to establish a medically determinable left knee pain impairment to cause this knee to give out every other day.  ...  Indeed, Dr. Pasha's aforementioned assessment places the claimant in the restricted range of light level work activity and the Judge does give Dr. Pasha's assessment some weight and incorporated some of his listed limitations into the residual functional capacity.  However, Dr. Pasha's opinion that the claimant would be limited to no more than three hours of standing and/or walking in an eight-hour workday is simply not supported by the objective medical evidence.  Aside from his listed diagnosis in the report--lumbar spondylosis and degenerative disc disease for the lumbar spine--Dr. Pasha does not provide any objective medical evidence (diagnostic testing or objective medical findings on examination) in support of this restriction.  He cites to lumbar MRI results consistent with his diagnosis but makes no mention of any serious abnormalities on this testing (e.g., disc herniation, serious spinal stenosis).  One is left to assume that he is basing this restriction on the claimant's subjective complaints made to him.  This deficiency detracts from the supportability of Dr. Pasha's opinion and lessens the weight the Judge can give it.  This is particularly the case because the claimant's credibility in this matter is so poor (see below).

[10] at 21-22.

In *Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000), the Fifth Circuit set out the factors an ALJ must address when determining that a treating physician's opinion is not entitled to controlling weight. Citing 20 C.F.R. § 404.1527(d), the *Newton* Court stated that when rejecting or giving little weight to the treating physician's opinion, the ALJ must consider:

(1) the physician's length of treatment of the claimant;

(2) the physician's frequency of examination;

(3) the nature and extent of the treatment relationship;

(4) the support of the physician's opinion afforded by the medical evidence of record;

(5) the consistency of the opinion with the record as a whole; and

(6) the specialization of the treating physician.

*Newton*, 209 F.3d at 456. In the Court's opinion, the ALJ considered these factors, despite Plaintiff's argument to the contrary. As set out *supra*, the ALJ gave due consideration to Plaintiff's treatment with Dr. Pasha as well as the medical evidence of record. Though no mention was made of any specialty, such omission did not prejudice Plaintiff since this is not a case in which the ALJ rejected the treating physician's opinion in favor of another physician's opinion.

The Social Security Ruling (SSR) that addresses when to give controlling weight to a treating physician's opinion reads, in pertinent part:

1. A case cannot be decided in reliance on a medical opinion without some reasonable support for the opinion.

2. Controlling weight may be given only in appropriate circumstances to medical opinions, i.e., opinions on the issue(s) of the nature and severity of an individual's impairment(s), from treating sources.

3.  Controlling weight may not be given to a treating source's medical opinion unless the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques.

4.  Even if a treating source's medical opinion is well-supported, controlling weight may not be given to the opinion unless it also is "not inconsistent" with the other substantial evidence in the case record.

5.  The judgment whether a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record requires an understanding of the clinical signs and laboratory findings and what they signify.

6.  If a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight; i.e., it must be adopted.

7.  A finding that a treating source's medical opinion is not entitled to controlling weight does not mean that the opinion is rejected. It may still be entitled to deference and be adopted by the adjudicator.

SSR 96-2p, http://www.socialsecurity.gov/OP_Home/rulings/di/01/SSR96-02-di-01.html. The ALJ followed the guidelines of this ruling when considering Dr. Pasha's opinion.

The Fifth Circuit has held that treating physician's opinions are not conclusive. *See, e.g.*, *Greenspan v. Shalala,* 38 F.3d 232, 237 ("The treating physician's opinions, however, are far from conclusive."). It remains the ALJ's job throughout the process to determine whether a claimant is disabled for social security purposes. The undersigned concludes that substantial record evidence supports the ALJ's decision. He did give controlling weight to the restrictions Dr. Pasha gave that were supported by the medical evidence of record, and properly discounted those that were not. The ALJ even added environmental restrictions based on the medical records. That the ALJ did not reference the frequent lying down and missing more than three times a month portions of Dr. Pasha's statement does not mandate remand. *See, e.g., Bordelon v.*

*Astrue*, 281 F. A'ppx 418, 422 (5th Cir. 2008). There is no record evidence to support Dr. Pasha's imposition of those limitations. Moreover, in addition to not being well-supported, Dr. Pasha's limitations were in conflict with the diagnostic test results and treatment notes, as discussed by the ALJ.

Plaintiff argues that with respect to Dr. Pasha's opinion, the ALJ failed to follow the mandate of SSR 96-9p. [12] at 12. However, that SSR addresses the implications of an RFC for less than a full range of sedentary work. The Court found the instruction regarding medical source statements in SSR 96-5p:

> A medical source's statement about what an individual can still do is medical opinion evidence that an adjudicator must consider together with all of the other relevant evidence (including other medical source statements that may be in the case record) when assessing an individual's RFC. Although an adjudicator may decide to adopt all of the opinions expressed in a medical source statement, a medical source statement must not be equated with the administrative finding known as the RFC assessment. Adjudicators must weigh medical source statements under the rules set out in 20 CFR 404.1527 and 416.927, providing appropriate explanations for accepting or rejecting such opinions.

http://www.socialsecurity.gov/OP_Home/rulings/di/01/SSR96-05-di-01.html. The ALJ provided his reasons for not accepting Dr. Pasha's statement in its entirety and those reasons are supported by substantial evidence, described by the ALJ. This case is distinguishable from *Newton*, in which the Court determined that the ALJ "summarily rejected" the treating physician's opinion. 209 F.3d at 458. The claimant was not prejudiced by the ALJ's failure to request additional information, as was the case in *Newton*. In this case, Plaintiff is essentially arguing that the ALJ should have violated the regulation and simply accepted Dr. Pasha's statement with its unsupported limitations as the RFC.

**2.     Case Manager's Opinion**

Citing SSR 06-03p, Plaintiff also argues that the ALJ failed to properly consider the statement regarding Plaintiff's mental limitations provided by her case manager at Weems Community Mental Health Center ("Weems"). This ruling provides the framework for considering statements from medical sources who are not "acceptable medical sources" within the meaning of social security law. Plaintiff argues that because she received ongoing mental health care from Weems, her case manager's opinion should have been give more weight than that of the consulting examiner, Dr. Jan Boggs. Dr. Boggs only saw Plaintiff once and concluded that she was malingering. [10] at 198.

Ms. Latonya Salter, Plaintiff's case manager at Weems, provided a statement based on a last visit date of November 18, 2010, indicating that Plaintiff's ability to follow work rules and relate to coworkers was fair, but that her ability to deal with the public, use judgment, deal with work stress, function independently, and maintain attention/concentration was poor. [10] at 220. Notably, Ms. Salter left the section for describing any limitations preventing the claimant from working completely blank. *Id.* at 220.

> The applicable regulation provides in pertinent part:
>
> Information from these "other sources" cannot establish the existence of a medically determinable impairment. Instead, there must be evidence from an "acceptable medical source" for this purpose. However, information from such "other sources" may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function.

SSR 06-03p, http://www.socialsecurity.gov/OP_Home/rulings/di/01/SSR2006-03-di-01.html. Dr. Boggs qualifies as an "acceptable medical source" under the regulation whereas Ms. Salter does not.

9

The ALJ considered the records from Weems, noting:

> The claimant goes to Weems Community Mental Health Center for her psychological complaints (Exhibit B9F). Treatment notes dated April 25, 2012 do not establish any serious problems. On this date the claimant related some ongoing disputes with her daughter. The therapist indicates that the claimant is not exhibiting any signs of psychosis or major affective disruption. Findings on examination are unremarkable: The claimant is described as calm, cooperative and exhibiting appropriate grooming. She was alert and oriented in all spheres. No abnormal motor movements were detected. Thought processes were linear. She denied suicidal ideation. Memory was grossly intact. Insight, reliability and judgment were termed as fair. Intelligence is termed as average. The listed diagnosis is a major depressive disorder, moderate.

[10] at 20-21. The ALJ also specifically addressed Plaintiff's argument on this point:

> Counsel argues that significant weight should be given to the assessment completed by case manager L. Salter on November 23, 2010 (Exhibit B7F). Ms. Salter filled out a checklist statement indicating that the claimant functions poorly in most areas. There are problems with this assessment. First, the Judge has no idea what Ms. Salter's qualifications are to make such assessments. She is simply listed as a case manager on this statement with no supporting qualifications included. Second, Ms. Salter is clearly not a psychiatrist or a psychologist and so not as qualified as Drs. Boggs and Bohn to form opinions on such issues, including recognizing malingering. She may have formed her impression mainly on the claimant's subjective complaints to her, which further detracts from the weight that can be given to her assessment. She does not herself provide any evidence to support her opinion (e.g., abnormal findings on examination). Finally, her assessment is inconsistent with the aforementioned treatment records from Weems Community Mental Health Center from April 2012 indicating that the claimant is not experiencing any serious problems and listing unremarkable findings on examination. For these reasons Ms Salter's assessment cannot be given any weight. The Judge notes that there is nothing from a treating psychiatrist or treating psychologist advising that the clamant is experiencing any significant psychologically related limitations. All of this evidence supports the Judge's finding that the claimant possesses the residual mental functional capacity to perform simple, routine and repetitive tasks with only occasional interaction with the public, coworkers and supervisors.

[10] at 23. The limitations offered by the Weems case manager were clearly considered by the ALJ and incorporated in his RFC assessment.

## CONCLUSION

Accordingly, for the reasons stated above, the undersigned recommends that Plaintiff's Motion be denied and Defendant's Motion for an Order Affirming the Decision of the Commissioner be granted.

The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendation contained within this report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  28 U.S.C. §636.

Respectfully submitted, this the 29th day of December, 2014.

                                          /s/ Linda R. Anderson  
                                          UNITED STATES MAGISTRATE JUDGE